I. Richard GREEN, Appellant,

v.

KAYNAR MANUFACTURING CO., Inc.,
etc., Appellee.

No. 19966.

United States Court of Appeals
Ninth Circuit.

Nov. 21, 1966.

Morton R. Goodman, Beverly Hills, Cal., for appellant.

Charles W. Wolfe, of Larwill & Wolfe, Los Angeles, Cal., for appellee.

Before CHAMBERS and ELY, Circuit Judges, and TAVARES, District Judge.

CHAMBERS, Circuit Judge:

In December, 1962, by written contract, the Kaynar Company hired Green to set up a new products division for it in California. Green is a citizen of Illinois and Kaynar is a California corporation.

Within two months, and before Green could get his family moved to California, Kaynar became dissatisfied with its new executive. From that point forward, the evidence is sharply in dispute. Kaynar insists it tried to negotiate a termination but did not discharge Green. The latter says, "Nonsense, I was fired."

Green, after some negotiation, filed this diversity action. The trial court ruled for Kaynar. It reasoned that Green's testimony and his letters showed that the contract was terminated and that Green's arguments with Kaynar after the first clash with the company, wherein he contended for a new contract with some guarantees against another discharge, proved it. The court found it unnecessary to decide whether Green was discharged or, if discharged, whether the discharge was wrongful. It projected its final decision on the basis that it assumed, without deciding, that Green was wrongfully discharged. (Kaynar did not plead that Green was discharged for cause, but an issue of wrongful discharge, or cause for discharge, was probably imported into the case by the pretrial order.)

Some contract principles seem evident. First, if, as Kaynar says, Green was not discharged but just refused on demand to report to work, Green has no rights. Also, if Green was discharged for a proper cause, he would have no rights. Further, we find no basis in the record for holding that the parties expressly terminated (or by implication intended to voluntarily terminate) the December, 1962, contract.

Of course, after the troubles arose, Green was asking for a new contract that would protect him against discharge for the balance of the contract year. We do

not think that by such negotiation Green should be held to have rescinded, repudiated, or abandoned the contract. The policy of the law favoring compromises should protect him in so far as he was negotiating for some settlement, even though he insisted on too much. However, in our view, when Kaynar requested Green to come back to work under the contract, even though he had been wrongly discharged, under the principle of mitigation of damages he was required to accept the job, if it was the same one, or give up his rights under the contract. Obviously, he did not intend to do the latter.

When Green signed the contract, he took the risk of Kaynar not liking him or his work, with the result that he could be caught with the penalty of having given up his Illinois home and connections. He had no right to insist, before or after the trouble arose, that Kaynar bond itself to be nice according to his sole standards.

But we see in the record an unresolved question. Was Green offered by Kaynar in good faith the same or substantially a similar job when he was asked to return as he had contracted for originally? See Billetter v. Posell, 94 Cal.App.2d 858, 211 P.2d 621. We would not hold that he had to come out to California and as an executive do menial work. And we would not hold that requiring an executive to sit and do nothing would exonerate Kaynar. There may be enough in the record for the district court to now decide the issue, which, because of its view of the law, it did not do. However, if the parties have any more evidence on this issue, they should be permitted to develop it.

Also, if Kaynar alternatively contends Green was rightfully discharged it should be permitted to submit any further evidence it has on the point. If he was rightfully discharged, then we would have a situation where the request to come back to work could be called an offer to reinstate, and Green's refusal to comply could be called a rejection of the offer. And thus Green would have no rights.

We still leave the fact-finding to the trial judge. We give no indication as to how the facts should be found. Some cases are permitted to go on too long. This one terminated, as we see it, a little too quickly.

Reversed.

ELY, Circuit Judge (dissenting):

I dissent. The district judge heard the testimony of the appellant and observed the manner in which he gave it. He then found that appellant, after having conferred with appellee "relative to a mutual termination of [his] said employment * * * by his acts, acquiesced in, and consented to the termination of the Agreement of Employment * * *" I do not say that the Findings of Fact and Conclusion of Law should not have been more finely drawn. To me, however, they reveal a simple determination that both parties became disenchanted with prospects under the Agreement of Employment and, quite quickly, mutually agreed to rescind it. This factual determination should not, in my opinion, be disturbed. Fed.R.Civ.P. 52(a). I would affirm.